FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2012 APR 20 AM 10: 54

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

UNITED STATES OF AMERICA

v.

ZACHARY TIMOTHY ROSE
DR. DONALD HALL
DR. TODD PERLA
DR. MARC TAFFLIN
DR. ANTHONY POSCA
DR. ELDON DALE BRANDT
KRYSTOPHER ADRIAN LEGG
RYAN AUSTIN YOUNG
  a/k/a "Nubby"
YEVGENY DRUBETSKOY
  a/k/a "Gene"
THEODORE JOHN ENQUIST
  a/k/a "Teddy"
BRIAN DANIEL GOLDBERG
JASON COLE VOTROBEK
TERESA FAULKNER

| | |
|---|---|
| CASE NO. | 3:11-cr-5(S2)-J-20JRK |
| Ct. 1: | 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C) and 841(b)(2) |
| Ct. 2: | 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2 |
| Ct. 3: | 18 U.S.C. §§ 1956(h) and 1957 |
| Forfeiture: | 18 U.S.C. § 982 |
| | 21 U.S.C. § 853 |

## SECOND SUPERSEDING INDICTMENT

The Grand Jury charges:

## COUNT ONE
### (The Drug Conspiracy)

### A. INTRODUCTION

At all times material, unless otherwise specified:

1.      The Controlled Substances Act (CSA) governs the manufacture,

distribution, and dispensing of controlled substances in the United States.  With limited

exceptions for medical professionals, the CSA made it "unlawful for any person

knowingly or intentionally . . . to manufacture, distribute, or dispense . . . a controlled substance" or conspire to do so.

2.  The CSA and its implementing regulations set forth which drugs and other substances are defined by law as "controlled substances," and those controlled substances are then assigned to one of five schedules, Schedule I, II, III, IV, or V, depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

3.  "Schedule II" means that the drug or other substance has a high potential for abuse, the drug has a currently accepted medical use with severe restrictions, and abuse of the drug or other substances may lead to severe psychological or physical dependence.

4.  Schedule "IV" means that the drug or other substance has a low potential for abuse relative to the drugs or other substances in Schedule II and Schedule III, the drug or other substance has a currently accepted medical use in treatment, and abuse of the drug or other substances may lead to limited physical dependence or psychological dependence.

5.  Pursuant to the CSA and its implementing regulations, Oxycodone, the generic name for a highly addictive prescription painkiller, is classified as a Schedule II Controlled Substance, and sold generically or under a variety of brand names, including Oxycodone, Roxicodone, Oxycontin, and Percocet. If legally prescribed for a legitimate medical purpose, these drugs are typically used to treat moderate to severe pain.

6.     Pursuant to the CSA and its implementing regulations, Alprazolam (Xanax) is classified as a Schedule IV Controlled Substance, and is sold generically or under the brand name Xanax.  When prescribed for a legitimate medical purpose, it is typically used to treat anxiety disorder, panic disorder, and anxiety caused by depression.

7.     Medical practitioners authorized to prescribe or dispense controlled substances by the jurisdiction in which they are licensed to practice medicine are authorized under the CSA to write prescriptions for or otherwise dispense controlled substances if they are registered with the Attorney General of the United States.  The Drug Enforcement Administration (DEA) assigns a unique registration to each such physician.

8.     Under Chapter 21 of the Code of Federal Regulations, Section 1306.04(a), medical practitioners registered with the DEA cannot issue a prescription unless it is "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. . . . An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research [is] not a prescription within the meaning and intent of [the CSA] and the person knowingly filling such a purported prescription, as well as the person issuing it, [is] subject to the penalties provided for violations of the provisions relating to controlled substances."

9.     Florida Statute Section 458.326 authorizes licensed physicians to prescribe or administer controlled substances under Schedules II through V to a person for treatment of intractable pain, provided that the physician does so in accordance with

3

that level of care, skill, and treatment recognized by a reasonable prudent physician under similar conditions and circumstances.

## B. DEFENDANTS

10.     Defendant ZACHARY TIMOTHY ROSE (ROSE), a Ft. Pierce, Florida resident, has no known medical education or background, but was the primary owner and manager of at least three pain management clinics in Jacksonville, Duval County, Florida, from late 2009 through on or about July 29, 2010, including Jacksonville Pain and Urgent Care ("Jacksonville Pain"), located at 1395 Cassat Avenue, Suite 2, Jacksonville, Florida; Duval Wellness Center ("Duval Wellness"), located at 203-9A West 48th Street, Jacksonville, Florida; and First Coast Pain and Urgent Care ("First Coast Pain"), located at 5834 Normandy Boulevard, Jacksonville, Florida.

11.     Defendant DONALD HALL (DR. HALL), a Lake City, Florida resident, was a physician with an active license to practice medicine issued by the State of Florida and was registered with the DEA to dispense, administer and prescribe controlled substances in Schedules II through V, who worked as a prescribing physician at Jacksonville Pain and later Duval Wellness.

12.     Defendant TODD PERLA (DR. PERLA), a Lake City, Florida resident, was a physician with an active license to practice medicine issued by the State of Florida and was registered with the DEA to dispense, administer and prescribe controlled substances in Schedules II through V, who worked as a prescribing physician at Jacksonville Pain and later Duval Wellness.

13.     Defendant MARC TAFFLIN (DR. TAFFLIN), a Ponte Vedra Beach, Florida resident, was a physician with an active license to practice medicine issued by the State

4

of Florida and was registered with the DEA to dispense, administer and prescribe controlled substances in Schedules II through V, who worked as a prescribing physician at Jacksonville Pain and later First Coast Pain.

14. Defendant ANTHONY POSCA (DR. POSCA), a Pensacola, Florida resident, was a physician with an active license to practice medicine issued by the State of Florida and was registered with the DEA to dispense, administer and prescribe controlled substances in Schedules II through V, who worked as a prescribing physician at First Coast Pain.

15. Defendant ELDON DALE BRANDT (DR. BRANDT), a Jacksonville, Florida resident, was a physician with an active license to practice medicine issued by the State of Florida and was registered with the DEA to dispense, administer and prescribe controlled substances in Schedules II through V, who worked as a prescribing physician at Jacksonville Pain.

16. Defendant KRYSTOPHER LEGG (LEGG), a Columbus, Ohio resident, organized large groups of "patients" to travel from the Columbus, Ohio area to Jacksonville, Florida to see the physicians at Jacksonville Pain, Duval Wellness and First Coast Pain to obtain Oxycodone and Xanax.

17. Defendant RYAN AUSTIN YOUNG (YOUNG), a Boca Raton, Florida resident, was employed in a managerial capacity at Jacksonville Pain and later First Coast Pain, but has no known medical training and was not a medical professional licensed in any capacity in Florida.

5

18.    Defendant YEVGENY DRUBETSKOY (DRUBETSKOY), a Maryland resident, was employed in a managerial capacity at Duval Wellness, but has no known medical training and was not a medical professional licensed in any capacity in Florida.

19.    Defendant THEODORE JOHN ENQUIST (ENQUIST), a Jacksonville, Florida resident, was employed in a managerial capacity at Duval Wellness and later First Coast Pain, but has no known medical training and was not a medical professional licensed in any capacity in Florida.

20.    Defendant BRIAN DANIEL GOLDBERG (GOLDBERG), a Miami Beach, Florida resident, was employed in a managerial capacity at First Coast Pain, but has no known medical training and was not a medical professional licensed in any capacity in Florida.

21.    Defendant JASON COLE VOTROBEK (VOTROBEK), a Vero Beach, Florida resident, was employed in a managerial capacity at Jacksonville Pain and later Duval Wellness, but has no known medical training and was not a medical professional licensed in any capacity in Florida.  During the Jacksonville, Florida conspiracy, VOTROBEK went to Atlanta, Georgia to open his own pain management clinic, known as Atlanta Medical Group (AMG).

22.    Defendant TERESA FAULKNER (FAULKNER), a Starke, Florida resident, was a licensed pharmacy technician, who worked in the dispensaries inside Jacksonville Pain and Duval Wellness.

6

## C. **THE AGREEMENT**

23.     Paragraphs 1 through 22 are re-alleged and incorporated herein. From in or about December 2009 through on or about July 29, 2010, at Jacksonville, Duval County, in the Middle District of Florida, and elsewhere, the defendants,

ZACHARY TIMOTHY ROSE,
DR. DONALD HALL,
DR. TODD PERLA,
DR. MARC TAFFLIN,
DR. ANTHONY POSCA,
DR. ELDON DALE BRANDT,
KRYSTOPHER ADRIAN LEGG,
RYAN AUSTIN YOUNG (a/k/a "Nubby"),
YEVGENY DRUBETSKOY (a/k/a "Gene"),
THEODORE JOHN ENQUIST(a/k/a "Teddy"),
BRIAN DANIEL GOLDBERG,
JASON COLE VOTROBEK,
THERESA FAULKNER,

did knowingly and willfully combine, conspire, confederate and agree with each other and other persons who are known and unknown to the grand jury, to distribute and dispense Oxycodone, a Schedule II Controlled Substance, and Alprazolam (Xanax), a Schedule IV Controlled Substance, not for a legitimate medical purpose and not in the usual course of professional medical practice, in violation of Title 21, United States Code, Sections 846, 841(a)(1), 841(b)(1)(C) and 841(b)(2).

## D. **MANNER AND MEANS OF THE CONSPIRACY**

The manner and means of the conspiracy included the following:

24.     It was part of the conspiracy that the defendants would and did knowingly open, use, operate and maintain places of business, including Jacksonville Pain, Duval Wellness and First Coast Pain for the purpose of unlawfully distributing and dispensing

7

and causing the unlawful distribution and dispensing of controlled substances, including Oxycodone and Alprazolam ("Xanax").

25.     It was part of the conspiracy that the defendants would and did knowingly and intentionally distribute and dispense and cause to be distributed and dispensed controlled substances not for a legitimate medical purpose and not in the usual course of professional medical practice in one or more of the following manners:

(a) without adequate verification of the patient's medical complaint;

(b) without adequate and reliable patient medical history to verify if what the patient told the physicians was accurate;

(c) without performance of a complete or adequate physical, diagnostic or neurological examination;

(d) without establishment of a true diagnosis;

(e) without the use of appropriate diagnostic or laboratory testing;

(f) without sufficient dialogue with the patient regarding treatment options and risks and benefits of such treatments;

(g) without establishing a treatment plan;

(h) without consideration of or discussion with the patient regarding alternatives to treatment other than Schedule II narcotics;

(i) without referral of patients to specialists in an effort to identify and correct the patient's alleged pain;

(j) without any assessment of an individual patient's risk of abuse of Schedule II narcotic drugs;

(k) without provision of a means to monitor the patient's response to the medications or compliance with medical usage;

(l) writing prescriptions for Schedule II opiates (Oxycodone) to patients who admitted obtaining those drugs off the streets;

8

(m) issuing medically inappropriate prescriptions for the highly addictive Schedule II opiate drugs (Oxycodone) to an inordinately high number of patients in their 20s and 30s;

(n) routinely writing medically inappropriate prescriptions for potentially lethal combinations of 30 mg oxycodone pills, 15mg Oxycodone pills and 2mg Xanax tablets;

(o) without maintaining true, accurate and complete medical records that justified the course of treatment for each patient, including a patient's medical history, physical examination results, diagnostic therapeutic and laboratory results, evaluations and consultations, treatment plans and objectives, discussions of risks and benefits, records of all medications prescribed, dispensed, or administered.

26. It was part of the conspiracy that the defendants would and did perform acts and make statements to attract as many "patients" as possible from states such as Ohio, Kentucky and Tennessee to convince those patients that they could eliminate over 600 miles round trip from their drive to south Florida and instead travel to Jacksonville Pain, Duval Wellness and First Coast Pain and still obtain the amounts of 30mg and 15mg Oxycodone pills and Xanax tablets they were accustomed to obtaining at south Florida pain management clinics.

27. It was part of the conspiracy that the defendants would and did require a patient to pay between $250 and $300 in cash per visit to Jacksonville Pain, Duval Wellness and First Coast Pain to see the physicians who worked at the respective clinics. Medical insurance, credit cards, checks and other forms of payment were not accepted.

28. It was part of the conspiracy that the defendants would and did typically require "new patients" to obtain magnetic resonance images (MRI) before being seen at the clinic. The defendants often referred the patients to an individual who owned a

9

mobile trailer containing an MRI machine, which was often parked behind Jacksonville Pain and Duval Wellness. The patients likewise paid between $200 and $300 in cash for the MRIs.

29.     It was further part of the conspiracy that the defendants would and did maintain in house dispensaries inside Jacksonville Pain, Duval Wellness and First Coast Pain to distribute and dispense Oxycodone, Xanax and other controlled substances directly out of the pain clinics.  The price per 30mg oxycodone pill fluctuated between $3.00 and $5.00 per pill.  The price for each 15mg Oxycodone pill was typically half that charged for a 30mg Oxycodone pill.

30.     It was part of the conspiracy that the defendants, primarily the owner of the clinics, ROSE, would and did pay the physicians at Jacksonville Pain, Duval Wellness and First Coast Pain between $40.00 and $60.00 per patient.  The physicians were permitted to see as many patients as they so desired each day.  This ranged from approximately 30 to 90 patients, depending on the physician.

31.     It was part of the conspiracy that the defendants would and did knowingly and intentionally distribute and dispense controlled substances and cause controlled substances to be distributed and dispensed to patients knowing that the patients were addicted to the controlled substances, were misusing or abusing the controlled substances, or were requesting additional quantities of controlled substances to support the patient's own addictions, or to share with or give the controlled substances away to others.

32.     It was part of the conspiracy that the defendants would and did fail to give adequate drug screening tests, allowed conditions for patients to use fake or synthetic

10

urine to pass the drug screening or allowed patients who failed the drug screening test to return to the clinic later to attempt to pass the drug screening again.

33.     It was part of the conspiracy that because of the number of patients at each clinic, which routinely exceeded well over 100 patients per day, that the patients waited significant periods of time to see the physicians. This caused patients to park outside of the pain clinics the night before, sleep in their vehicles (which traveled from other states) and line up at the clinics' entrance areas as early as 5:00 a.m.

34.     It was further part of the conspiracy that the defendants, primarily ROSE and the clinic management at Jacksonville Pain, Duval Wellness and First Coast Pain, would and did hire a security company that used armed security guards to maintain control of the crowds of patients at the clinics on a daily basis.

35.     It was part of the conspiracy that the defendants would and did encourage and accept "sponsors," such as defendant LEGG, to bring large groups of "patients" on a weekly basis from out of state, including the Columbus, Ohio area, and designate these patients as "VIP" patients and allow them to bypass the long lines that formed at the clinics to see the physicians.

36.     It was part of the conspiracy that defendant LEGG made arrangements with his sponsored "patients" that LEGG would and did pay all cash fees for the sponsored patients' physician visits, MRI scan and expenses for the 30mg and 15mg oxycodone pills and xanax tablets.  In return, once the sponsored patients saw the various physicians, the sponsored patients returned the Oxycodone and Xanax pills to LEGG in return for a fee of between $1,000 and $500, or a specific amount of 30mg Oxycodone pills, usually 50 such pills.  The market rate for a single 30mg Oxycodone

pill during an illicit drug sale in the Ohio, Kentucky and Tennessee areas is approximately $30.00 per pill.

37.     It was part of the conspiracy that defendant LEGG would and did collect the 30mg and 15mg Oxycodone pills from the sponsored patients and redistribute them in the Columbus, Ohio area for substantial profits.

38.     It was part of the conspiracy that the defendants would and did use a software program known as Scriptsure to facilitate the ability to quickly issue electronic prescriptions.

39.     It was part of the conspiracy that the defendants would and did issue and cause to be issued standard prescriptions of 30mg Oxycodone pills ranging in number from 120 to 240 dosages per month, 15mg oxycodone pills ranging in number from 60 to 120 dosages per month and Xanax ranging in number from 30 to 60 dosages per month when no true malady existed necessitating such significant prescriptions.

40.     It was further part of the conspiracy that the defendants would and did obtain and cause to be obtained from numerous pharmaceutical vendors significant amounts of Oxycodone pills using the various physicians' DEA issued numbers.  From approximately December 2009 through July 29, 2010, Jacksonville Pain, Duval Wellness and First Coast Pain obtained approximately 3.2 million units of Oxycodone using the DEA numbers of the physicians who worked at the clinics.

41.     It was further part of the conspiracy that certain defendants would and did collect the cash generated from the business at Jacksonville Pain, Duval Wellness and First Coast Pain on a daily basis, count the cash at the clinics and make daily deposits of significant sums of money at various banks in Jacksonville, Florida.  For Jacksonville

12

Pain, the daily cash deposits ranged from $12,249.00 to $157,786.00. For Duval Wellness, the daily cash deposits ranged from $14,020.00 to $166,509.00. For First Coast Pain, the daily cash deposits ranged from $12,130.00 to $92,613.00.

42. It was part of the conspiracy that certain defendants would and did open various other bank accounts to periodically transfer the deposited cash from the clinics' accounts to hide and conceal and cause to be hidden and concealed the nature of the deposited money.

43. It was further part of the conspiracy that ROSE would and did take certain cash derived from the illicit drug conspiracy and purchased luxury automobiles, including a 2000 Ferrari, a 2004 Lamborghini, a 2010 Mercedes Benz S550, a 2010 Land Rover and a 2006 BMW 750.

44. It was further part of the conspiracy that the defendants would and did perform acts and make statements to hide and conceal and cause to be hidden and concealed the purpose of the conspiracy and the acts committed in furtherance thereof.

All in violation of Title 21, United States Code, Sections 846, 841(a)(1), 841(b)(1)(C) and 841(b)(2).

## COUNT TWO
### (Aiding and Abetting the Oxycodone Distribution Resulting in Death)

45. On or about April 19, 2010, at Jacksonville, Duval County, in the Middle District of Florida,

ZACHARY TIMOTHY ROSE,
DR. DONALD HALL,
KRYSTOPHER ADRIAN LEGG,

the defendants herein, did knowingly and intentionally distribute, cause to be distributed and aid and abet the distribution of Oxycodone, a Schedule II controlled substance, the distribution of which was not for a legitimate medical purpose and not in the usual course of professional medical practice, the use of which resulted in the death of Robert Lee Johnson on April 20, 2010.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT THREE
### (The Money Laundering Conspiracy)

46.     Paragraphs 1 through 44 are re-alleged and incorporated herein.

47.     From in or about January 2010, and continuing through on or about July 29, 2010, at Jacksonville, Duval County, in the Middle District of Florida, and elsewhere,

ZACHARY TIMOTHY ROSE,
DR. DONALD HALL,
DR. TODD PERLA,
DR. MARC TAFFLIN,
RYAN AUSTIN YOUNG (a/k/a "Nubby"),
YEVGENY DRUBETSKOY (a/k/a "Gene"),
THEODORE ENQUIST (a/k/a "Teddy"),
BRIAN DANIEL GOLDBERG,
JASON COLE VOTROBEK,

the defendants herein, did knowingly and willfully combine, conspire, confederate and agree with each other and other persons who are known and unknown to the grand jury, to engage in monetary transactions of a value greater than $10,000.00, occurring in the United States and affecting interstate commerce, in criminally derived property, such property having been derived from a specified unlawful activity, that is, a

14

conspiracy to distribute and dispense Oxycodone, a Schedule II controlled substance, and Alprazolam (Xanax), a Schedule IV controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), 841(b)(1)(C) and 841(b)(2).

It was part of the conspiracy that the defendants would perform acts and make statements to hide and conceal and cause to be hidden and concealed the purpose of the conspiracy and the acts committed in furtherance thereof.

All in violation of Title 18, United States Code, Sections 1956(h) and 1957.

**FORFEITURE**

1.  The allegations contained in Counts One through Three of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853 and Title 18, United States Code, Section 982.

2.  Pursuant to Title 21, United States Code, Section 853, upon conviction of Count One, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), 841(b)(2) and 846, punishable by imprisonment for more than one year, the defendants,

ZACHARY TIMOTHY ROSE,
DR. DONALD HALL,
DR. TODD PERLA,
DR. MARC TAFFLIN,
DR. ANTHONY POSCA,
DR. ELDON DALE BRANDT,
KRYSTOPHER ADRIAN LEGG,
RYAN AUSTIN YOUNG (a/k/a "Nubby"),
YEVGENY DRUBETSKOY (a/k/a "Gene"),
THEODORE JOHN ENQUIST (a/k/a "Teddy"),
BRIAN DANIEL GOLDBERG,

15

JASON COLE VOTROBEK,
TERESA FAULKNER,

shall forfeit to the United States of America any property constituting, or derived from,

any proceeds obtained, directly or indirectly, as the result of such offenses and any

property used, or intended to be used, in any manner or part, to commit, or to facilitate

the commission of, the offenses. The property to be forfeited includes, but is not limited

to, the following:

    a.    $20,726.00 U.S. Currency seized from First Coast Pain and Urgent Care, Inc.; Asset ID No. 10-DEA-535235;

    b.    Funds in the amount of $91,488.75 seized from SunTrust Bank Account No. 1000106583205, held in the name of First Coast Pain and Urgent Care, Inc.; Asset ID No. 10-DEA-535254;

    c.    Funds in the amount of $2,151.04 seized from SunTrust Bank Account No. 1000110775524, held in the name of Rosenberg Investment Group, LLC.; Asset ID No. 10-DEA-535264;

    d.    Funds in the amount of $604.88 seized from Bank of America Account No. 898037549610, held in the name of Charthouse Investments, LLC.; Asset ID No. 10-DEA-535286

    e.    Funds in the amount of $4,025.93 seized from SunTrust Bank Account No. 100010774709, held in the name of ZTR Consulting, Inc.; Asset ID No. 10-DEA-535391;

    f.    Funds in the amount of $113,074.53 seized from SunTrust Bank Account No. 1000108662775, held in the name of Duval Wellness Center, Inc.; Asset ID No. 10-DEA-535409;

    g.    Funds in the amount of $2,000,734.91 seized from SunTrust Bank Account No. 1000110776860, held in the name of Southeast Medical Holdings, LLC.; Asset ID No. 10-DEA-535299;

    h.    Funds in the amount of $706.10 seized from Mercantile Bank Account No. 8601764369, held in the name of Todd A. Perla or Brenda Jane Perla; Asset ID No. 10-DEA-535157;

    i.    Funds in the amount of $60,520.92 seized from Bank of America

16

Account No. 003440041613, held in the name of Marc E. Tafflin, DO, PA.; Asset ID No. 10-DEA-535293;

j. Funds in the amount of $641.16 seized from Bank of America Account No. 002072103337, held in the name of Marc E. Tafflin; Asset ID No. 10-DEA-535295;

k. Funds in the amount of $57,903.41 seized from SunTrust Bank Account No. 1000106895559, held in the name of Jason Votrobek, LLC.; Asset ID No. 10-DEA-535395;

l. 2007 Mercedes-Benz, S550V Sedan, black in color, Florida License Plate Number 559YKX, VIN WDDNG71X87A141415, Registered owner Jason Cole Votrobek; Asset ID No. 10-DEA-535302;

m. $7,034.00 United States currency seized from Donald W. Hall and Sandra Caroline Hall, a/k/a Alexandra; Asset ID No. 10-DEA-535236;

n. Funds in the amount of $7,236.93 seized from Bank of America Account No. 005495596878, held in the name of Donald W. Hall, D.O., Sandra Caroline Hall and Jason Hall; Asset ID No. 10-DEA-535290;

o. Funds in the amount of $3,763.84 seized from Bank of America Account No. 005494882150, held in the name of Donald W. Hall, D.O. and Alexandra Hall; Asset ID No. 10-DEA-535297;

p. Funds in the amount of $125,045.93 seized from SunTrust Bank Account No. 1000110776852, held in the name of Premier 69 Investments, LLC; Asset ID No. 10-DEA-535298;

q. Funds in the amount of $279,601.04 seized from SunTrust Bank Account No. 1000110775516, held in the name of Southeast Medical Holdings, LLC; Asset ID No. 10-DEA-535403;

r. Smith & Wesson SW9VE 9mm Pistol seized from Duval Wellness Center, Inc.; Asset ID No. 10-DEA-535126;

s. Funds in the amount of $1,450.40 seized from SunTrust Bank Account No. 1000100185353, held in the name of Zachary Timothy Rose; Asset ID No. 10-DEA-535284;

t. Funds in the amount of $4,482.45 seized from Wachovia Bank

17

Account No. 2000042810722, held in the name of Bgold, Inc.; Asset ID No. 10-DEA-535165;

u.    2010 Land Rover Range Rover Sport LUX, VIN No. SALSK2D40AA247258, registered owner ZTR Consulting, Inc., seized from Alexandria Nicole Rose, a/k/a Alexandria Nicole Barry; Asset ID No. 10-DEA-535300;

v.    2010 GMC Yukon Denali, VIN No. 1GKUKEEF1AR189149, seized from Daniel William Talbott; Asset ID No. 10-DEA-535456;

w.    $10,736.00 United States currency; seized from Duval Wellness Center, Inc.; Asset ID No. 10-DEA-535136; and

x.    Northern Trust Bank, Check No. 16403, in the amount of $48,792.57, seized from Black Diamond Enterprises LLC, d/b/a Linus Automotive Group; Asset ID No. 10-DEA-535484.

3.    Pursuant to Title 21, United States Code, Section 853, upon conviction of

Count Two, in violation of Title 21, United States Code, Sections 841(a)(1) and

841(b)(1)(C), punishable by imprisonment for more than one year, the defendants,

ZACHARY TIMOTHY ROSE,
DR. DONALD HALL,
KRYSTOPHER ADRIAN LEGG,

shall forfeit to the United States of America any property constituting, or derived from,

any proceeds obtained, directly or indirectly, as the result of such offenses and any

property used, or intended to be used, in any manner or part, to commit, or to facilitate

the commission of, the offenses. The property to be forfeited includes, but is not limited

to, the following:

a.    $20,726.00 U.S. Currency seized from First Coast Pain and Urgent Care, Inc.; Asset ID No. 10-DEA-535235;

b.    Funds in the amount of $91,488.75 seized from SunTrust Bank Account No. 1000106583205, held in the name of First Coast Pain and Urgent Care, Inc.; Asset ID No. 10-DEA-535254;

c.   Funds in the amount of $2,151.04 seized from SunTrust Bank Account No. 1000110775524, held in the name of Rosenberg Investment Group, LLC.; Asset ID No. 10-DEA-535264;

d.   Funds in the amount of $604.88 seized from Bank of America Account No. 898037549610, held in the name of Charthouse Investments, LLC.; Asset ID No. 10-DEA-535286

e.   Funds in the amount of $4,025.93 seized from SunTrust Bank Account No. 100010774709, held in the name of ZTR Consulting, Inc.; Asset ID No. 10-DEA-535391;

f.   Funds in the amount of $113,074.53 seized from SunTrust Bank Account No. 1000108662775, held in the name of Duval Wellness Center, Inc.; Asset ID No. 10-DEA-535409;

g.   Funds in the amount of $2,000,734.91 seized from SunTrust Bank Account No. 1000110776860, held in the name of Southeast Medical Holdings, LLC.; Asset ID No. 10-DEA-535299;

h.   Funds in the amount of $125,045.93 seized from SunTrust Bank Account No. 1000110776852, held in the name of Premier 69 Investments, LLC; Asset ID No. 10-DEA-535298;

i.   Funds in the amount of $279,601.04 seized from SunTrust Bank Account No. 1000110775516, held in the name of Southeast Medical Holdings, LLC; Asset ID No. 10-DEA-535403;

j.   Smith & Wesson SW9VE 9mm Pistol seized from Duval Wellness Center, Inc.; Asset ID No. 10-DEA-535126;

k.   Funds in the amount of $1,450.40 seized from SunTrust Bank Account No. 1000100185353, held in the name of Zachary Timothy Rose; Asset ID No. 10-DEA-535284;

l.   2010 Land Rover Range Rover Sport LUX, VIN No. SALSK2D40AA247258, registered owner ZTR Consulting, Inc.,  seized from Alexandria Nicole Rose, a/k/a Alexandria Nicole Barry; Asset ID No. 10-DEA-535300;

m.   2010 GMC Yukon Denali, VIN No. 1GKUKEEF1AR189149, seized from Daniel William Talbott; Asset ID No. 10-DEA-535456;

n.   $10,736.00 United States currency; seized from Duval Wellness Center, Inc.; Asset ID No. 10-DEA-535136; and

19

o.  Northern Trust Bank, Check No. 16403, in the amount of $48,792.57, seized from Black Diamond Enterprises LLC, d/b/a Linus Automotive Group; Asset ID No. 10-DEA-535484.

4.  Pursuant to Title 18, United States Code, Section 982, upon conviction of Count Three, in violation of Title 18, United States Code, Sections 1956(h) and 1957, the defendants,

ZACHARY TIMOTHY ROSE,
DR. DONALD HALL,
DR. TODD PERLA,
DR. MARC TAFFLIN,
RYAN AUSTIN YOUNG (a/k/a "Nubby"),
YEVGENY DRUBETSKOY (a/k/a "Gene"),
THEODORE ENQUIST (a/k/a "Teddy"),
BRIAN DANIEL GOLDBERG,
JASON COLE VOTROBEK,

shall forfeit to the United States of America, any and all right, title, and interest they may have in any property, real or personal, involved in such offense, or any property traceable to such property, including but not limited to the following:

a.  $20,726.00 U.S. Currency seized from First Coast Pain and Urgent Care, Inc.; Asset ID No. 10-DEA-535235;

b.  Funds in the amount of $91,488.75 seized from SunTrust Bank Account No. 1000106583205, held in the name of First Coast Pain and Urgent Care, Inc.; Asset ID No. 10-DEA-535254;

c.  Funds in the amount of $2,151.04 seized from SunTrust Bank Account No. 1000110775524, held in the name of Rosenberg Investment Group, LLC.; Asset ID No. 10-DEA-535264;

d.  Funds in the amount of $604.88 seized from Bank of America Account No. 898037549610, held in the name of Charthouse Investments, LLC.; Asset ID No. 10-DEA-535286

e.  Funds in the amount of $4,025.93 seized from SunTrust Bank

20

Account No. 100010774709, held in the name of ZTR Consulting, Inc.; Asset ID No. 10-DEA-535391;

f.    Funds in the amount of $113,074.53 seized from SunTrust Bank Account No. 1000108662775, held in the name of Duval Wellness Center, Inc.; Asset ID No. 10-DEA-535409;

g.    Funds in the amount of $2,000,734.91 seized from SunTrust Bank Account No. 1000110776860, held in the name of Southeast Medical Holdings, LLC.; Asset ID No. 10-DEA-535299;

h.    Funds in the amount of $706.10 seized from Mercantile Bank Account No. 8601764369, held in the name of Todd A. Perla or Brenda Jane Perla; Asset ID No. 10-DEA-535157;

i.    Funds in the amount of $60,520.92 seized from Bank of America Account No. 003440041613, held in the name of Marc E. Tafflin, DO, PA.; Asset ID No. 10-DEA-535293;

j.    Funds in the amount of $641.16 seized from Bank of America Account No. 002072103337, held in the name of Marc E. Tafflin; Asset ID No. 10-DEA-535295;

k.    Funds in the amount of $57,903.41 seized from SunTrust Bank Account No. 1000106895559, held in the name of Jason Votrobek, LLC.; Asset ID No. 10-DEA-535395;

l.    2007 Mercedes-Benz, S550V Sedan, black in color, Florida License Plate Number 559YKX, VIN WDDNG71X87A141415, Registered owner Jason Cole Votrobek; Asset ID No. 10-DEA-535302;

m.    $7,034.00 United States currency seized from Donald W. Hall and Sandra Caroline Hall, a/k/a Alexandra; Asset ID No. 10-DEA-535236;

n.    Funds in the amount of $7,236.93 seized from Bank of America Account No. 005495596878, held in the name of Donald W. Hall, D.O., Sandra Caroline Hall and Jason Hall; Asset ID No. 10-DEA-535290;

o.    Funds in the amount of $3,763.84 seized from Bank of America Account No. 005494882150, held in the name of Donald W. Hall, D.O. and Alexandra Hall; Asset ID No. 10-DEA-535297;

21

p.     Funds in the amount of $125,045.93 seized from SunTrust Bank
       Account No. 1000110776852, held in the name of Premier 69
       Investments, LLC; Asset ID No. 10-DEA-535298;

q.     Funds in the amount of $279,601.04 seized from SunTrust Bank
       Account No. 1000110775516, held in the name of Southeast
       Medical Holdings, LLC; Asset ID No. 10-DEA-535403;

r.     Smith & Wesson SW9VE 9mm Pistol seized from Duval Wellness
       Center, Inc.; Asset ID No. 10-DEA-535126;

s.     Funds in the amount of $1,450.40 seized from SunTrust Bank
       Account No. 1000100185353, held in the name of Zachary Timothy
       Rose; Asset ID No. 10-DEA-535284;

t.     Funds in the amount of $4,482.45 seized from Wachovia Bank
       Account No. 2000042810722, held in the name of Bgold, Inc.;
       Asset ID No. 10-DEA-535165;

u.     2010 Land Rover Range Rover Sport LUX,
       VIN No. SALSK2D40AA247258, registered owner ZTR Consulting,
       Inc., seized from Alexandria Nicole Rose, a/k/a Alexandria Nicole
       Barry; Asset ID No. 10-DEA-535300;

v.     2010 GMC Yukon Denali, VIN No. 1GKUKEEF1AR189149, seized
       from Daniel William Talbott; Asset ID No. 10-DEA-535456;

w.     $10,736.00 United States currency; seized from Duval Wellness
       Center, Inc.; Asset ID No. 10-DEA-535136; and

x.     Northern Trust Bank, Check No. 16403, in the amount of
       $48,792.57, seized from Black Diamond Enterprises LLC, d/b/a
       Linus Automotive Group; Asset ID No. 10-DEA-535484.

6.     If any of the property described above, as a result of any act or omission

of the defendants:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided
without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

pursuant to Title 21, United States Code, Section 853(p), and Title 21, United States

Code, Section 853(p), as incorporated by Title 18, United States Code, Section

982(b)(1).

A TRUE BILL,

_____
Foreperson

ROBERT E. O'NEILL
United States Attorney

By: _____
A. TYSEN DUVA
Assistant United States Attorney

By: _____
MAC D. HEAVENER, III
Assistant United States Attorney
Deputy Chief, Jacksonville Division

23

FORM OBD-34

APR 1991

No. 3:11-cr-5(S2)-J-20JRK

# UNITED STATES DISTRICT COURT

Middle District of Florida
Jacksonville Division

## THE UNITED STATES OF AMERICA

vs.

## ZACHARY TIMOTHY ROSE, ET AL

## INDICTMENT

Violations:

Ct. 1:  21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C) and 841(b)(2)
Ct. 2:  21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C) and 2
Ct. 3:  18 U.S.C. §§ 1956(h) and 1957
Forfeiture

A true bill,

_____
Foreperson

Filed in open court this _30th_ day

of April, 2012.

_Megan O Chaddock_
Deputy Clerk

Bail  $_____